**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DAVID JOHN SCHEIDER and
CHRIS SCHEIDER, his wife,

    Plaintiffs,

vs.

                              Case No. 3:15-cv-364-J-34JRK

BILL LEEPER, Sheriff of Nassau
County, Florida,

    Defendant.
_____/

## **O R D E R**

**THIS CAUSE** is before the Court on Defendant Bill Leeper's Motion for Summary Judgment (Doc. 34; Motion), filed on May 19, 2017. Plaintiffs David John Scheider and Chris Scheider[1] filed a response in opposition to the Motion on May 31, 2017. See Plaintiffs' Response and Objection to Defendant's Motion for Summary Judgment (Doc. 36; Response). On July 31, 2017, at the Court's request, Defendant Leeper filed the exhibits to the Deposition of Detective Cedric Arline (Motion, Ex. 2; Arline Dep.), the Deposition of Deputy Brian Blackwell (id., Ex. 3; Blackwell Dep.), and the Deposition of David John Scheider (id., Ex. 4; Scheider Dep.). See Defendant's Notice of Filing Additional Exhibits (Doc. 38). Accordingly, the Motion is ripe for review.

---

[1] Chris Scheider's sole claim is for loss of consortium. See Complaint for Damages (Doc. 1; Complaint) at 6. Because her claim is derivative of David John Scheider's claims, the Court will use "Scheider" to refer to David John Scheider. When referring to his wife, the Court will use her full name, Chris Scheider.

-1-

**I.     Background**

On November 6, 2013, Detective Anthony Green of the Nassau County Sheriff's Office (NCSO) videotaped a confidential informant's illegal purchase of hydrocodone, a controlled substance, in a mobile home on Hawk Drive in Hilliard, Florida. See Motion Ex. 1: Deposition of Detective Anthony Green (Green Dep.) at 6, 9-13. The surveillance was taken from inside the mobile home. Id. at 13. The video shows a white male with visible tattoos smoking a cigarette, walking without assistance, and engaging in a drug transaction. Id. at 17; Arline Dep. at 12-13; Blackwell Dep. at 13-15, 20; Scheider Dep. at 11. Scheider is a white male and disputes that he bears any resemblance to the person on the video. See Scheider Dep. at 10. Notably, Scheider does not have any tattoos, is a non-smoker, and walked with a cane at the time of the sale. Id. at 11.

Neither Detective Green nor the confidential informant knew the identity of the seller. See Blackwell Dep. at 14; Green Dep. at 19. As such, Detective Green showed the video to other members of the NCSO Narcotics Unit and asked if anyone recognized the seller. See Green Dep. at 8-9; Arline Dep. at 16. Detective Cedric Arline stated that the seller looked like "Westside Pork Chop," referring to Scheider by his nickname.[2] See Arline Dep. at 13-14, 16. In his deposition, Detective Arline explained he believed that he recognized Scheider from surveillance that he conducted in 2007 and 2008 involving an illegal drug transaction. Id. at 10. Although the NCSO could have used additional measures to confirm the seller's identity, the officers did not undertake further efforts. See Green Dep. at 15-16, 20, 26; Blackwell Dep. at 20-21; Arline Dep. at 19.

---

[2]     In the Complaint, Scheider asserts that Detective Arline named him as the seller on November 6, 2013—the same day as the sale. See Complaint ¶ 12. Although Deputy Blackwell acknowledged that Detective Arline identified Scheider within a month of the sale, he did not recall whether the identification took place within a week of the sale. See Blackwell Dep. at 26-27.

-2-

Shortly after Detective Arline's identification, the NCSO removed Detective Green from the investigation of the November 6, 2013 drug transaction to enable him to complete his field training. See Green Dep. at 14-15. Sergeant Brian Blackwell took over the case. Id. at 7-8. On June 26, 2014, Sergeant Blackwell obtained a warrant for Scheider's arrest based on Detective Arline's identification. See Blackwell Dep. at 20, Ex 9: Arrest Warrant. Later that night, at 10:00 PM, Deputy Reynolds arrested Scheider at his home for sale of a controlled substance in violation of Florida Statute section 893.13(1)(a). See Blackwell Dep. at 8, Ex. 2: Arrest & Booking Report; Scheider Dep. at 5. Scheider posted a bond of approximately $2,500.00 and was released the next morning. See Scheider Dep. at 6-8. He also retained an attorney at a cost of approximately $7,000.00. Id. On July 28, 2017, the State Attorney's Office filed an information against Scheider. See Blackwell Dep. at 29, Ex. 8: Information.

On September 9, 2014 the State Attorney's Office filed a nolle prosequi dropping all charges against Scheider based upon the realization that Scheider had been misidentified as the seller on the video. See Complaint ¶¶ 16, 27; Green Dep. at 14; Blackwell Dep. at 37. Although Scheider's Arrest and Booking Report reflected that Scheider did not have any tattoos, see Arrest and Booking Report, the NCSO officers had no knowledge of whether Scheider was a smoker or walked with a cane at the time of the drug transaction, see Scheider Dep. at 11. As of the date of Detective Arline's deposition, the actual perpetrator had not been identified. See Arline Dep. at 14.

As a result of his arrest, Scheider suffered out of pocket losses, including the cost of the bond and attorney's fees, as well as emotional injuries. See Scheider Dep. at 14-15. Scheider experienced embarrassment when his family members and neighbors

learned about his arrest from various local newspapers. Id. at 14-16, 19-20. Further, the incident aggravated his pre-existing anxiety and depression and caused him to seek treatment at Wekiva Springs, a psychiatric facility, for ten days. Id. at 33-35, Ex. 1: Plaintiff's, David Scheider's Notice of Answering Interrogatories (Interrogatory Answers) at 6. Additionally, Chris Scheider, Scheider's wife, took time off work to care for Scheider. Id. at 18-19.

Plaintiffs initiated this lawsuit on March 24, 2015, by filing a three-count Complaint against Defendant Angela Corey, in her official capacity as the State Attorney for the Fourth Judicial Circuit of Florida (the State Attorney), and Defendant Bill Leeper, in his official capacity as the Sheriff of Nassau County, Florida (the Sheriff). See generally Complaint for Damages (Doc. 1; Complaint). On March 10, 2016, the Court entered an order dismissing all claims brought against Defendant Corey. See generally Order (Doc. 22). As such, only Count I and Count III of the Complaint are relevant to the instant Motion. In Count I, Scheider asserts a claim against Sheriff Leeper pursuant to 42 U.S.C. § 1983 (Section 1983) and 42 U.S.C. § 1988 (Section 1988) based on the violation of his Fourth Amendment right to be free from unreasonable searches and seizures arising out of his false arrest. See Complaint ¶¶ 8-19. In Count III, Chris Scheider alleges a loss of consortium claim. Id. ¶¶ 31-34. Plaintiffs seek compensatory damages and attorney's fees and costs. Id. ¶ 6.

## II.    Standard of Review

Under Rule 56, Federal Rules of Civil Procedure (Rule(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to

be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).[3] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed.2d 202 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Id. Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

"Although an unpublished opinion is not binding . . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

-5-

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Analysis

#### A. Scheider's § 1983 Claim Against Leeper in his Official Capacity

In Count I, Scheider seeks to hold Sheriff Leeper liable under Section 1983 in his official capacity as the Sheriff of Nassau County. See Complaint ¶ 5 ("Plaintiffs sue Sheriff Leeper in his official capacity . . ."). Where an officer is sued under Section 1983 in his official capacity, the suit is actually a proceeding against the entity the officer represents. See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005); see also Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed.2d 301 (1991) ("[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed.2d 114 (1985))). Accordingly, Scheider's claim against Sheriff Leeper in his official capacity as Sheriff of Nassau County is actually

a claim against Nassau County. Thus, the Court considers Sheriff Leeper's liability in the context of those cases discussing county and municipal liability under Section 1983.

"[S]ection 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law." Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted); see Section 1983. Thus, to state a claim for relief under Section 1983, a plaintiff must sufficiently allege that he or she was "'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" See Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (quotation omitted). Here, Scheider asserts a violation of his constitutional Fourth Amendment rights based on his false arrest.[4]

Preliminarily, the Court notes that to the extent that Scheider seeks to hold Nassau County vicariously liable for the actions or omissions of the employees responsible for Scheider's allegedly false arrest, the Motion is due to be granted. The United States Supreme Court has soundly rejected the theory of respondeat superior as a basis for liability in Section 1983 actions. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978). Instead, a county or municipality may be liable in a Section 1983 action "only where the municipality itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier, 402 F.3d at 1115 (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the municipality

---

[4] The Fourth Amendment applies to state and local governments pursuant to the Due Process Clause of the Fourteenth Amendment. See Brown, 608 F.3d at 734 n.15.

was the "moving force" behind the alleged constitutional deprivation. See Monell, 436 U.S. at 693-94, 98 S. Ct. at 2038. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted). Indeed, municipal liability arises under Section 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed.2d 412 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 1300-01, 89 L. Ed.2d 452 (1986)). A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under Section 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489.

In some circumstances, "the failure to provide proper training may fairly be said to represent a policy for which the city may be held liable if it actually causes injury." City of Canton, 489 U.S. at 390, 109 S. Ct. at 1205. Failure to train can lead to municipal liability "only where a municipality's failure to train its employees in a relevant respect evidences a

'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 388-89, 109 S. Ct. at 1200 (alteration added). Thus, in order to assert such a claim, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). The Eleventh Circuit has repeatedly held that "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." Id. at 1351. Indeed, "the need for such training must be plainly obvious to [County] decisionmakers," such as where there is "evidence of a history of widespread prior abuse." Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990) (alteration added); see also Rocker v. City of Ocala, Fla., 355 F. App'x 312, 314 (11th Cir. 2009) (per curiam).[5]

Notably, "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred." Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996); see also City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573, 89 L. Ed.2d 806 (1986) ("[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); Vineyard v. Cnty. of Murray, Ga., 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a

---

[5] The Court notes that the Supreme Court, in dictum, has left open the possibility that "a need to train could be 'so obvious,'" that a city could be held liable even without a pattern of prior constitutional violations. See Gold, 151 F.3d at 1352 (citing City of Canton, 489 U.S. at 390, 109 S. Ct. at 1205). The Supreme Court offered the example of the need to train officers in the use of deadly force where the officers are provided firearms. City of Canton, 489 U.S. at 390 n.10, 109 S. Ct. at 1205 n.10. Because an "obvious need" claim "must be based on a 'particular glaring omission in a training regimen' and not merely on 'possible imperfections' in a training program," the Court finds that the record here does not contain evidence to sustain a failure to train claim based on this theory. See West v. Tillman, 496 F.3d 1321, 1331 n.16 (11th Cir. 2007) (quoting Gold, 151 F.3d at 1352).

violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise."). However, the Court need not determine whether officers of the NCSO falsely arrested Scheider in violation of the Fourth Amendment to resolve the Motion. Even assuming arguendo that Scheider suffered a constitutional deprivation, the Motion is due to be granted.

In the Motion, Sheriff Leeper argues that Scheider fails to allege, or produce any evidence to suggest, "that any policy, custom or practice of the Sheriff's Office, or any lack of training, caused Mr. Scheider's arrest." See Motion at 2. Notably, Scheider does not specify the theory under which he seeks to hold Nassau County liable. In the Complaint, Scheider alleges that "Sheriff Leeper made policy for the NCSO with respect to searches, seizures, arrests and use of force," and that he "had the power, right and duty to train and control his officers, agents and employees to conform to the Constitution of the United States." See Complaint ¶ 5. However, he neither explains what these policies are nor suggests how they contributed to his false arrest. He similarly fails to address these matters in the Response. Indeed, in the Response, Scheider fails to point to any evidence demonstrating the existence of any particular custom or practice in Nassau County, much less one that caused his false arrest. Indeed, Scheider does not identify even a single instance of a prior constitutional violation by an officer of the NCSO. Instead, in the Response he simply repeats his understanding of the arrest itself. Even assuming that Scheider's understanding of the events surrounding his arrest is entirely accurate, it does not raise a genuine issue for trial in this Section 1983 action against Sheriff Leeper in his official capacity. To do so, Scheider was required to bring forth evidence suggesting the

existence of an official policy, or alternatively, a custom or widespread practice of Nassau County that was the moving force behind the constitutional violation at issue.

To preclude entry of summary judgment, Scheider is required to go beyond the Complaint and, through affidavit, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that a genuine issue remains for trial. See Jeffery, 64 F.3d at 593-94. Although advised of his obligations in responding to a motion for summary judgment, see Summary Judgment Notice (Doc. 35), Scheider has failed to do so with regard to his Section 1983 claim. Indeed, none of Scheider's evidence "touches" on the NCSO's policies, customs or practices. See Motion at 5. Because Scheider has failed to provide any evidence of a pattern of related constitutional violations, Scheider has not shown that any unlawful customs were in place at the NCSO at any point. As such, Scheider has failed to demonstrate a genuine issue of material fact with respect to whether such customs or practices existed and thus, Defendant Leeper, in his official capacity as Sheriff of the NCSO, cannot be held liable for the alleged constitutional violation. Accordingly, with respect to Count I of the Complaint, the Motion is due to be granted.[6]

### B.     Chris Scheider's Consortium Claim Against the Sheriff

A spouse with a cause of action for loss of consortium has a claim that is derivative of the injured spouse's claim. Faulkner v. Allstate Ins. Co., 367 So.2d 214, 217 (Fla. 1979);

---

[6]     The Court notes that Plaintiff brings Count I of the Complaint pursuant to Section 1983 and Section 1988. See Complaint ¶ 9. However, "Section 1988 authorizes attorney's fees as part of a remedy for violations of civil rights statutes; it does not create an independent right of action." Estes v. Tuscaloosa Cnty., Ala., 696 F.2d 898, 901 (11th Cir. 1983); see also Moor v. Alameda Cnty., 411 U.S. 693, 702, 93 S. Ct. 1785, 1792, 36 L. Ed.2d 596 (1973), reh'g denied, 412 U.S. 963, 93 S. Ct. 2999, 37 L. Ed.2d 1012 (1973). Thus, to the extent that Scheider brings an independent claim under Section 1988 in Count I of the Complaint, Defendant Leeper is entitled to summary judgment as a matter of law.

Gates v. Foley, 247 So.2d 40, 45 (Fla. 1971); accord Stone v. United States, 373 F.3d 1129, 1132 (11th Cir. 2004). Because the Court has determined that summary judgment is due to be entered in favor of Sheriff Leeper on Scheider's Section 1983 claim, Chris Scheider's loss of consortium claim against Sheriff Leeper cannot survive. Therefore, with respect to Count III of the Complaint, the Motion is due to be granted as well. See Mandel v. McNesby, No. 3:08-cv-49-RV/MD, 2008 WL 5427738, at *5 (N.D. Fla. Dec. 29, 2008).[7]

**IV. Conclusion**

Plaintiffs have failed to create a genuine dispute of material fact to preclude entry of summary judgment. In light of the foregoing, the Court finds that the Motion is due to be granted and entry of summary judgment with respect to Count I and Count III of the Complaint is warranted. Accordingly, it is

**ORDERED**:

1. Defendant, Bill Leeper's Motion for Summary Judgment (Doc. 34) is **GRANTED**.
2. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant Bill Leeper, in his official capacity, and against Plaintiffs David John Scheider and Chris Scheider.

---

[7] Sheriff Leeper also argues for entry of summary judgment with respect to Count III of the Complaint because "Florida law does not allow recovery for a loss of consortium claim predicated on a federal civil rights violation." See Motion at 7 (citation omitted). However, the Court need not address this argument in light of its finding that the Motion is due to be granted with respect to Count III on an alternative basis.

3. The Clerk of the Court is further directed to terminate all remaining pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of August, 2017.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc25

Copies to:
Counsel of Record